Robert CHAPMAN

v.

M/G TRANSPORT SERVICES, INC.

Civ. A. No. 75–982.

United States District Court,
W. D. Pennsylvania.

May 24, 1977.

Joseph P. Moschetta, Washington, Pa., for plaintiff.

Anthony J. Polito, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is now before me on the motion of the defendant, M/G Transport Services, Inc. (M/G), engaged in the business of repairing towboats and barges along with other non-maritime machinery, for summary judgment against the plaintiff, Robert Chapman, former employee of the defendant. The plaintiff has filed an admiralty and maritime action consisting of a claim for maintenance and cure, a Jones Act claim, 46 U.S.C. § 688[1] and a general maritime claim based on unseaworthiness of the defendant's vessel, all as a result of an accident which occurred at the defendant's landing and dock on the Ohio River in Kanauga, Ohio on November 22, 1974.

At the time of the accident the plaintiff, along with other employees, were performing major repair work on a salt brine barge (SB-40), owned by the defendant docked at its landing but not out of the water. The plaintiff's work assignment was to cut out and replace the compartments in the inside hopper area. The plaintiff alleges that another employee accidently dropped a scaffolding plank on his arm causing fractures, permanent injuries to his hand, arm, back, spine, neck and central nervous system and a traumatic neurosis.

The defendant M/G moves for summary judgment against the plaintiff claiming that there is no genuine issue as to any material fact because (1) the plaintiff was not a Jones Act seaman at the time of the accident in that the SB-40 which he was repairing was not in navigation and he was not permanently connected to it nor aboard it in aid of its navigation; (2) warranty of seaworthiness does not extend to a vessel in for repair; and (3) any claims of unseaworthiness by a longshoreman against a shipowner were abolished by the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).

As was held in *Griffith v. Wheeling Pittsburgh Steel Corp. and American Commercial Lines, Inc.,* 521 F.2d 31, C.A. 3, 1975, and as I held in *Specht v. Pittsburgh Coal Company and Campbell Barge Lines,* D.C., 432 F.Supp. 717, filed December 2, 1975, the record must be scrutinized carefully before summary judgment is granted on the issue of seaman status. That being done here, these pertinent facts found in the affidavits of the defendant and the plaintiff and in the plaintiff's deposition remain uncontroverted, (1) the plaintiff Robert Chapman was employed by the defendant only from November 8, 1974 until November 22, 1974; (2) the plaintiff admits on pages 8 and 11 of his deposition that he was classified during that employment period as a welder at $3.25 per hour; (3) if the plaintiff had worked longer, he would have had to join Local 15357 of the United Steelworkers of America; (4) the defendant had a separate agreement with Local 54 of the Teamsters Union for members of the deck

---

1. 46 U.S.C. § 688 (in part) Recovery for injury to or death of seaman. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right by trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . ."

crew on vessels it owned and operated; (5) the defendant had a separate agreement with Local 14599 of the United Steelworkers of America for masters, engineers and pilots of its vessels; (6) the plaintiff worked on an hourly shift and lived full time at his home; (7) the SB–40 had no power and according to the plaintiff's deposition at page 16, it had been in the same position for about three months having repair work done on it part time; and (8) the plaintiff was assigned as a welder on the day of the accident to the lower landing where new storage bins were to be placed in the SB–40.

 Based on these facts and the three pronged test in *Griffith, supra,* the plaintiff is not a seaman. An individual is a seaman under the Jones Act if (1) the ship is in navigation; (2) there is more or less a permanent connection with the ship and (3) the worker be aboard primarily to aid in navigation. *Griffith v. Wheeling Pittsburgh Steel Corp. et al., supra; Specht v. Pittsburgh Coal Company et al., supra.* All three criteria must be met for the plaintiff to bring an action under the Jones Act, 46 U.S.C. § 688. Here, the facts make it obvious that the plaintiff was neither more or less permanently connected with the SB–40 nor was he aboard primarily to aid in navigation. In *Specht, supra,* the plaintiff was classified as a repairman, and had only a temporary relationship with the vessel. Here the plaintiff as a welder was only connected to the SB–40 when his work detail was such that he was ordered to complete repairs. It was only temporary if there is a connection at all. In *Specht,* the plaintiff was not found to be aiding in the vessel's navigation while he removed its rubber stripping. Likewise here, the plaintiff while cutting out and replacing compartments in the SB–40 would not be aiding in its navigation.

Whether or not the SB–40 was "in navigation" need not be decided as in *Specht,* because it is not essential for a seaman determination when the two other criteria are not met. As a matter of law, I conclude that the plaintiff Chapman was not a seaman at the time of his injury.

The plaintiff's claim that the defendant owed him the duty to provide a seaworthy vessel is negated by the fact that the SB–40 was docked and undergoing extensive repair and as such was not in navigation requiring seaworthy status. But even if the plaintiff were entitled to a warranty of seaworthiness, he would have had to be doing work which was traditionally done by a seaman. Cutting out and replacing metal compartments in a barge while it is docked is not work traditionally done by a seaman. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *Rao v. Hillman Barge and Construction Co.,* 467 F.2d 1276, C.A. 3, 1972; *Specht, supra.*

Accordingly, the defendant's motion for summary judgment against the plaintiff on his Jones Act and seaworthiness claims will be granted for the reason that there exists no genuine issue of material fact.